[Filed January 11, 1892.]

## LINDLEY MEEKER v. N. P. R. R. CO.

RAILROADS—INJURY TO ANIMALS—UNFENCED TRACK.—Under section 4044, Hill's Code, a railroad company is liable for the death or injury of stock caused by a moving train upon or near its unfenced track, happening where the track is required to be fenced, whether or not the death or injury is caused by actual contact with the train.

Columbia county: FRANK J. TAYLOR, Judge.

Defendant appeals. Affirmed.

*McBride & Dresser*, for Respondent.

*Dolph, Bellinger, Mallory & Simon*, for Appellant.

LORD, J.—This was an action brought under section 4044, Hill's Code, to recover damages for the alleged value of a mare, which had entered upon the railroad track of the defendant company, where the same was unfenced, and while there was driven by a moving train into an open trestle, and so crippled and injured as to be rendered valueless.

The facts tended to show that there were some three or four horses, including the mare, running at large upon a range that entered upon the unfenced track of the defendant's railroad; that not far behind where the horses entered upon the track was an engine and train coming along, and that as soon as the engineer discovered them, he sounded the alarm-whistle of the engine, as is usually given when stock is on the track; and that the horses becoming frightened at the approaching train, or the sound of the whistle, or both combined, commenced running along the track, followed by the engine and train, until they reached an open trestle on the track, where the mare fell and broke her fore leg just below the knee joint, while the others passed over without injury; that neither the engine nor any part of the train came in actual contact or collision with any of the horses or mare, but was stopped more than one hundred feet before reaching the trestle where the mare

XXI OR.—33.

fell; that the track along which the horses were running was graded part of the way on the side of a hill, the banks on both sides being steep; and there being not to exceed two places from the place of their entry upon the track to the trestle or place where the mare was injured where they could leave the track without great difficulty or danger. Substantially upon this state of facts, the counsel for the defendant moved for a nonsuit upon the ground that the evidence for the plaintiff disclosed no liability, in that the animal was not "touched by any train, car, or engine of the defendant," and that the company is "not liable for frightening the animal." Upon the motion being overruled, the defendant excepted, and the error assigned in this regard constitutes the important question to be determined. That question involves the proper construction of section 4044, Hill's Code, which provides, that "any person, * * * or corporation, owning or operating any railroad, shall be liable for the value of any horses, etc., killed, and for reasonable damages for any injury to any such live-stock upon or near any unfenced track of any railroad in this state whenever such killing or injury is caused by any moving train or engine or cars upon such track."

The contention for the defendant is, that the killing or injury mentioned in the section, has reference only to such as results from or is caused by actual contact of the moving train or engine or cars with the animal killed or injured. If it were intended by the statute that the killing or injury must have been caused by actual collision, that is, the stock must have been killed or injured by actual contact or collision with a moving train or engine, upon such track, then the defendant is not liable, and the plaintiff cannot recover upon the evidence; for while it is clear that the railroad was not fenced, where the duty to fence existed, by reason of which the horses got upon the track, it is equally clear that none of them was struck by the engine and thereby killed or injured; but that while thus on the track, the mare, like the other horses, becoming frightened, either at

the noise of the approaching train or the repeated sounding ·of the stock-alarm whistle, or both combined, fled down the track, followed by the engine and cars, and ran into the open trestle and was permanently injured, without any actual collision with the engine or cars of the train, or any negligence (as we shall assume) or willful misconduct of the agents in charge of it. Under such circumstances, the defendant claims that the statute does not contemplate any liability; that damages resulting from fright to animals and not from actual collision, where there is no imputation of negligence or willful misconduct on the part of the agents of the corporation, are consequential and not within the purview of the statute. In support of this construction of the statute, namely, that the death or injury of the animal must be caused by actual collision with the engine or cars of the train, we are referred to *Peru, etc. R.R. Co.*v. *Hasket,* 10 Ind. 409; 71 Am. D. 335; *Ohio, etc. Ry. Co.* v. *Cole,* 41 Ind. 331.

In the first case, at the sound of the whistle on the approaching train, the mare ran on the track before the train until she came to a culvert, and then jumped so as to clear the culvert, and fell on the side of the track and broke her left leg, but she was not touched by the engine or any of the cars of the train. Upon this state of facts, the court held that the statute contemplated a direct injury; that the language "shall be killed or injured by the cars or locomotive, or other carriages," etc., involved the idea of actual collision, and that it would not be consistent with the intent of the act to give the language such an exposition as would cover a case of consequential damages. The court says: "No doubt the train caused the animal to take fright, and the injury was the result of such fright. But suppose the mare, at the sound of the whistle, instead of running upon the road, had run from the road, and while thus running had received an injury, would the company be liable? It seems to us it would not. The principle of the case hypothetically stated would be alike applicable to the case at bar." In the other case, a colt was frightened

by a train and ran from an adjoining field upon the railroad track, which was not properly fenced, and broke its leg between the bars of a cow-pit; and as the facts showed that the colt was not injured by the locomotive or cars, or touched by them, it was held that the company was not liable under the statute.

In *Lafferty* v. *R. R. Co.* 44 Mo. 291, the horses got on the track of the railroad where it was not fenced, and while on the track they were frightened by the train, and in running hurt themselves while jumping off the track, but there was no collision, nor were the animals injured by any actual contact. The words of the statute are, that the company shall be "liable in double the amount of all damages which shall be done by its agents, engines, or cars, to horses, cattle, mules, or other animals on said road." Although the phraseology of the statute differed somewhat from the Indiana statute on this subject, the court thought, in substance and effect, it was identically the same, and held that it contemplated a direct or actual collision between the train and the animal injured.

In *Schertz* v. *R. R. Co.* 107 Ill. 577, the language of the statute of Illinois is identical with the statute of Missouri on the same subject; that is, in case of a failure to comply with the provisions of the statute, the railroad corporation should be liable for all damages that might be done by its "agents, engines, or cars." In this case there was no collision, and the horse was not injured by any actual contact; but becoming frightened at the approaching train, ran down the track, and in its flight was injured by jumping a cattle-guard, without any negligence or willful misconduct on the part of the servants of the corporation. Upon these facts, the court thought the statute admitted of the same construction as was given to the Missouri statute, and held that where the stock is not killed or injured by any actual collision, there is no liability on the railroad corporation, saying: "Consequential damages resulting from fright to animals, not caused by any negligence or willful miscon-

duct of the agents of the corporation, are not embraced within the statute." (*Louisville, etc. Ry. Co.* v. *Smith,* 58 Ind. 575; *Baltimore, etc. R. R. Co.* v. *Thomas,* 60 Ind. 107; *Croy* v. *Louisville, etc. R. R. Co.* 97 Ind. 126; *Knight* v. *N. Y. etc. R. R. Co.* 99 N. Y. 25; *Holder* v. *Chicago, etc. R. R. Co.* 11 Lea, 176; *Seibert* v. *Missouri, etc. R. R. Co.* 72 Mo. 565.)

Under statutes of this character, it is essential to the liability of a railroad company for the death or injury of an animal, that it should be actually touched by the engine or cars of the train. The decisions turn upon the language of the enactment which import the idea of actual collision or contact with the animal injured or killed. In such cases, whenever the owner of stock founds his claim for damages upon statutes of this sort, he is required to bring his case substantially within its terms, by alleging and proving that the stock was killed or injured by the loco-motives, etc., or was done by an engine or agent, according to its provisions. Hence, under statutes of this kind, rail-road companies are not liable for frightening stock by their engines or cars, even though the fright causes the animals to kill themselves. They exclude by their language any injury not occurring from actual collision with the loco-motives or cars. But the inquiry is raised whether or not the language of the statute is broad enough in its terms to include, not only injuries which are caused by direct collision, but such as might result from a moving train to any live-stock upon or near its unfenced track.

Our statute says, in brief, that a railroad company shall be liable for any stock killed or injured upon or near any unfenced track, whenever such killing or injury is caused by a moving train upon such track. In construing this statute, it must be constantly borne in mind that there must be a want of a fence along the railroad track, which would have prevented the injury; and that where the want of a fence sustains no relation to or connection with the injury, when caused by a moving train, the statute has no applica-tion. Hence, the case suggested, intended to illustrate that

MEEKER v. N. P. R. R. Co. [Sup. Ct.

if any construction be given to the statute for the death or injury of stock other than occurs by actual collision, it might be contended "if a horse running in the pasture of his owner, through which the railroad passes, and is unfenced, should take fright at a passing train, run half a mile across the field in an opposite direction from the railroad, then run into a pit dug by the owner, or against a fence built by him, or against a tree which nature put there, broke his neck and died, the railroad company would be liable for the value of the horse because the track of its railroad was unfenced," is not well taken. In such case, or cases of that sort, the want of a fence sustains no relation to or connection with the injury, and the statute has no application. When a statute imposes liability for the killing or injury of stock, caused by a moving train, upon or near its unfenced track, it includes all such causes as are produced by a moving train that directly contribute to that result, whether caused by actual collision or not, when the injury occurs upon or near its unfenced track. The words "whenever such killing or injury is caused by a moving train," etc., relate to injuries directly caused by it to stock upon or near its unfenced track, and are broad enough to include all injuries thus occurring, which are the direct result of such moving train upon such track. This would include injuries occurring upon its track from other causes than actual collision. The killing or injury must be caused by a moving train; but it is immaterial whether such killing or injury is the result of actual collision or not, so that it is caused, for the want of a fence, by a moving train, upon or near its track.

It is enough if the injury which results is caused by a moving train, when the lack of a fence permitted the animal to get on the track. This construction is further sustained by the use of the words "near any unfenced track," which indicate a place where the death or injury to the animal may happen without actual contact with the engine, yet be caused by it. Hence, a moving train may

be the cause of the injury or death of an animal without actual collision. To illustrate: For the want of a fence along the track of a railroad where it ought to be fenced, an animal enters upon the track, and while there, takes fright at an approaching or moving train; and to escape the danger, runs along the track and falls into a trestle, or jumps into a ditch near the track and is injured. Is not the injury caused by a moving train? It caused the animal to take fright, and in its flight to run into the trestle or jump into the ditch and injure itself. From the cause of the fright to the injury, there is no break nor intervening agency. The moving train was the cause of the injury, and without it the injury would not have occurred. Under our statute, then, it is sufficient, if the moving train caused the injury, in connection with an omission to fence, whether there was actual collision or not. Under statutes of other states, where the language of the enactment did not necessarily import that there must be actual collision to give a right of recovery, their courts have held that it is not necessary that there shall be a collision to entitle the owner of the injured animal to recover.

In *Young* v. *St. Louis, etc. R. R. Co.* 44 Iowa, 173, a horse went upon the defendant's track, which was not fenced, before a train, and ran ahead of the train until it fell into a bridge and received injuries from which it died. There was but a single narrow passage down the fill of the road, affording an avenue of escape between the point where the horse went upon the track and the bridge. The train was stopped before it reached the horse. The statute of Iowa imposes upon railroad companies liability for stock injured upon their roads when unfenced at points where the duty to fence exists, when the injury results by reason of want of a fence, and is not occasioned by the willful act of the owner. Under this statute, and upon the facts as stated, the railroad company was held liable. The court said: "When, then, may it be said that an animal is injured by

reason of a want of a fence, within the meaning of the statute?" The answer was: "It is when the want of a fence in connection with the acts of the defendant, is the proximate cause of the injury."

In *Kraus* v. *R. R. Co.* 55 Iowa, 338, the mare got on the track by reason of a want of a fence, and being frightened by a train, ran along the track in front of it until she came to a bridge forming a part of the road, in attempting to cross which she was greatly injured, without having been struck by the train; and the court held that it was not necessary that the mare should have been struck by the train to authorize a recovery under the statute. In this case the defendant asked the court to instruct the jury, that "if the railroad run through a plat of country from the point where the mare in question came upon the track, and could have escaped from the track just as well as not, but instead of doing so she ran along upon the track, jumped into the bridge and was injured without collision with the locomotive or railroad train drawn by it, then there can be no recovery in this action." The court says: "We are not prepared to say the defendant can escape a result caused by its negligence in failing to fence, by setting up a want of intelligence, or the negligence of the animal injured; nor are we prepared to say, as a matter of law, that the plaintiff cannot recover if the facts were as stated in the instruction refused."

In *Liston* v. *Central, etc. R. R. Co.* 70 Iowa, 714, it was claimed that the horse was not killed by reason of the absence of a fence at the place of accident, because there was nothing to prevent him from leaving the track; but the court held, although a horse may be crazy if he get upon the track of a railroad on account of a want of a fence, where the duty to fence exists, and, for want of intelligence, runs ahead of the engine on the track, when he might escape on either side, and runs into a bridge and is killed, without being struck by the engine, the company is

liable, notwithstanding the horse's want of intelligence and the manner of his death.

In *A. T. etc. R. R. Co.* v. *Jones*, 20 Kan. 529, a mare got on the track at a place where it ought to have been but was not fenced, and being frightened at an approaching train, fled along the track until she reached a tie-bridge, where she either jumped forward, or was thrown forward by the engine, onto the bridge, and was fatally injured. The statute of Kansas imposes liability for every animal killed or wounded "by the engine or cars on such railway, or in any other manner whatever in operating such railway," etc., where there is an omission to fence. The court held that under the statute no actual collision between the engine and the animal injured is essential to liability. Brewer, J., speaking for the court, said: "This last clause is very broad and clearly covers a case like the present. Whether the engine struck the mare or not, the injury resulted directly from the operating of the railway. Of course, the mere fact that she was injured on the track, would not be conclusive. * * * But where the injury occurs in the actual operating of the railway, and as the direct result of such operating, then the statute applies. Here the company was running one of its trains; an animal is on the track, permitted to come on through the lack of a fence along the track at a place where it ought to be fenced; the approaching train frightens it, and it flees along the track to avoid danger; and in that flight either falls or is thrown by the engine into the open space of a tie-bridge and is injured. Clearly, the train, acting upon the animal's sense of fear, and the open space of the bridge, are the direct causes of the injury. It results from and occurs in operating the road."

In all these cases the fact that the train did not strike the animal, does not relieve the railroad company from liability; but in all of them the fence bears a relation to the injury in connection with the operation of the train as the proximate cause. Sections 4044, *supra*, and 4048, when

taken together, provide, in effect, that a railroad company shall be liable for the value of stock killed and for reasonable damages when injured upon or near any unfenced track of its road, whenever such killing or injury is caused by any moving train, engine, or cars upon such track; and (4048) that in every action for the recovery of such value for stock so killed, or for damages for such injury to the same, the proof of the killing or injury shall of itself be deemed and held conclusive evidence of negligence on the part of the company; but contributory negligence on the part of the plaintiff in such action may be set up as a defense. "The statute," says THAYER, C. J., "makes the killing or injury of stock in such case conclusive evidence of negligence upon the part of the railroad company, and I do not see that it is necessary for the plaintiff to allege negligence in any form." (*Hindman* v. *R. R. Co.* 17 Or. 620.)

We do not understand, then, in actions brought under the statute, that it is material whether the servants of the company operated the train carefully when there is an omission to fence, by reason of which stock get on the track, and the injuries to them which result therefrom, upon or near its track, are caused by a moving train. For this reason, we have assumed that there was no negligence of the servants of the defendants in the operation of the train, although the evidence indicates that there were but two places where the animals could have left the track without some difficulty or danger. So that under our statute, when the killing or injury to stock is caused by a moving train at a place where the company has failed to fence, where the duty to fence existed, and the facts are so alleged and proved, a case of negligence is made out, unless the defendant can show contributory negligence or misconduct.

In the case at bar, the mare got on the track for the want of a fence where the duty to fence existed, and frightened at an approaching train, fled down the track to escape the danger, and in that flight ran into an open trestle and was

injured. It was the want of a fence along the track at a place where it ought to have been fenced, that permitted the mare to get on the track; and the injury which resulted to her therefrom was directly caused by a moving train. The want of a fence, therefore, in connection with the moving train was the proximate cause of the injury, and rendered the company liable, under the terms of the statute, without actual collision. In this view we do not think there was any error, and the judgment of the court below must be affirmed.